NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

| | | |
|---|---|---|
| AMY WATEROUS, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 04-6042 (AET) |
| | : | |
| v. | : | |
| | : | MEMORANDUM OPINION |
| JO ANNE B. BARNHART, as | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

---

THOMPSON, U.S.D.J.

I.      Introduction

        This matter is before the Court on Plaintiff Amy Waterous's appeal of a final

administrative decision by Defendant Commissioner of the Social Security Administration

("Commissioner") denying Plaintiff's claim for Social Security disability insurance ("SSDI")

benefits.  The Court has jurisdiction to decide this matter pursuant to 42 U.S.C. § 405(g) and §

1383(c)(3).  For the reasons set forth below, the decision of the Commissioner is vacated and

remanded.

II.     Background

        A.      Plaintiff's Medical and Work History

        Plaintiff is 37 years old and has a high school education.  She previously worked as a

computer programmer, an assistant controller for a telemarketing firm, a waitress, and a

newspaper deliverer.  (R. at 13).  On or about February 19, 2002, Plaintiff was admitted to

Monmouth Medical Center after an MRI revealed that she had brain lesions.  Plaintiff had been

complaining of lightheadedness, dizziness, trouble with coordination on her left side, weakness,

and drooping on the left side of her face.  (R. at 112, 113.)  On or about February 22, 2002,

Plaintiff was diagnosed with possible multiple sclerosis ("MS") or acute ecephalomyelopathy by

Dr. Neil R. Holland and Dr. Jonathan H. Lustgarten.  (R. at 112.) On the recommendation of Dr.

Holland and Dr. Lustgarten, Plaintiff underwent physical therapy treatments from February 26,

2002 through March 13, 2002.  (R. at 114-18.)

Dr. Holland continued to treat Plaintiff during a series of follow-up visits beginning May

2, 2002 and extending through August 12, 2004.  (R. at 122-24, 126-27, 129-32, 165-66.)  Dr.

Holland's notes from August 1, 2002 and November 11, 2002 indicate that Plaintiff had been

working part-time.  (R. at 126-30.)  In his November 11, 2002 report, however, Dr. Holland

noted that Plaintiff "appeared to be in the midst of a relapse."  (R. at 127.)  In his November 22,

2002 report, Dr. Holland indicated that a new MRI revealed that Plaintiff had developed

additional lesions in her brain and on her spine.  (R. at 124.)  On that same date, Dr. Holland

wrote a letter stating that Plaintiff was unable to work.  (R. at 125.)  Subsequently, in his January

14, 2003 report, Dr. Holland indicated that while Plaintiff had improved on the whole compared

to her condition on her last visit, she still had minimal residual saccadic dysmetria, left pronator

drift, left hemiataxia and mild residual truncal ataxia.  (R. at 123.)

On May 7, 2003, Plaintiff was examined by Dr. Georges Dauzier, M.D., a Federal

Disability Specialist for the Social Security Administration.  Dr. Dauzier indicated in his notes

that Plaintiff complained of fatigue, concentration difficulties, and a lack of initiative.  (R. at

-2-

133.) Dr. Dauzier's impression of Plaintiff's condition was that she had MS of the relapsing remitting type, and her "chief difficulty stem[med] from [her] . . . instability of gait. (R. at 133.)

On May 20, 2003, Dr. Wm. D. Coffey, Psy. D., examined Plaintiff's psychiatric condition on behalf of the Social Security Administration.  He noted that she complained of fatigue, double vision, and lack of ambition.  He diagnosed her with a depressive disorder, and thought that her MS and other life stressors contributed to her depression.  He indicated, however, that her difficulties were "100% physical."  (R. at 136.)  His findings were confirmed by Dr. Ira Gash, Ph. D., who examined Plaintiff on June 3, 2003.  (R. at 148.)  Dr. Gash additionally found that Plaintiff had only mild restrictions in activities of daily living and social functioning, and no limits in concentration, persistence, or pace.  (R. at 155.)

B.    Procedural History

Plaintiff protectively filed an application for SSDI benefits on February 10, 2003.  She alleged that she became disabled due to relapsing MS on November 22, 2002, and was unable to continue working.  (R. at 44-47, 63.)  Plaintiff's application was denied initially on June 11, 2003, and again upon reconsideration.  (R. at 27, 33.)  Plaintiff requested a hearing, which was held on September 9, 2004 before the Administrative Law Judge (the "ALJ").  (R. at 36, 173-83.)

The ALJ issued an unfavorable decision on October 29, 2004.  On November 22, 2004, Plaintiff requested a review of the ALJ's decision (R. at 8, 167-72.)  The Appeals Council of the Social Security Administration denied the request for review on November 24, 2004.  (R. at 4-7.) As a result, the ALJ's decision became the Commissioner's final decision.  Having exhausted her administrative remedies, Plaintiff timely filed an appeal before this Court on December 6, 2004.

III.    Applicable Law

-3-

A.      Standard of Review

A district court has plenary review of the Commissioner's application of the law, and reviews the Commissioner's findings of fact to determine whether they are supported by substantial evidence.  42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). A court is required to review the entire record when making those determinations.  5 U.S.C. § 706; Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003).

A court must affirm the Commissioner's decision if there is substantial evidence supporting it.  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  The Commissioner's decision is afforded a great amount of deference; a court should not "set the . . . decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently."  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

B.      The Commissioner's Analysis for an Award of Disability Benefits

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A).

-4-

The Social Security Administration has promulgated a five-step evaluation to determine whether an individual is disabled.  See 20 C.F.R. § 404.1520; see generally Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  In step one, the Commissioner decides whether the claimant is currently engaging in substantial gainful activity.  If so, the claimant is not eligible for disability benefits.  20 C.F.R. § 404.1520(a)(4).   In step two, the Commissioner determines whether the claimant is suffering from a severe impairment.  If the impairment is not "severe," the claimant is not eligible for disability benefits.  20 C.F.R. § 404.1520(c).  If the Commissioner finds that the claimant has a "severe" impairment in step two, then the analysis continues under step three.  20 C.F.R. § 404.1520(a)(4).  In step three, the Commissioner determines whether the medical evidence indicates that the impairment is equivalent to an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1.  If so, the claimant is automatically eligible for benefits.

If the Commissioner finds that the impairment does not match one of the listed impairments, then the analysis continues under step four.  In step four, the Commissioner reviews whether the claimant retains the "residual functional capacity" to perform his past relevant work. "'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Hartranft, 181 F.3d at 359 n.1 (citing 20 C.F.R. § 404.1545(a)).   If a claimant can perform his past relevant work, he is not eligible for disability benefits.  20 C.F.R. § 404.1520(f).  Finally, in step five, the Commissioner considers whether other work "exist[s] in significant numbers in the national economy that the claimant can perform given his age, education, past work experience, and residual functional capacity." Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002) (citing Plummer, 186 F.3d at 428).  If there is such work, the claimant is not eligible for benefits.  20 C.F.R. § 404.1520(g).  In this final step,

-5-

"the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in order to deny a claim of disability."  Plummer, 186 F.3d at 428.

IV.    Discussion

Under steps one and two of the evaluation, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since her alleged disability began, and that Plaintiff's impairment was severe.  The ALJ, however, then concluded that Plaintiff's impairment did not meet listing level severity under step three of the evaluation.  The ALJ explained that "[a]lthough [Plaintiff] has slight unsteadiness of gait, it is not of listing level severity, and it would not prevent all work."  (R. at 15.)  In addition, the ALJ found that Plaintiff's "depressive disorder would not significantly affect her ability to do basic work activity."  (R. at 15.)

Because step three was not met, the ALJ then moved on to step four, and considered whether Plaintiff's impairment prevented her from doing her past relevant work.  The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work.  (R. at 16.) Based on this RFC, the ALJ found that Plaintiff could perform her past relevant work as an assistant controller for a telemarketing firm.  (R. at 17.)  Because the ALJ found that Plaintiff could perform her past relevant work under step four of the evaluation, he did not consider step five.  As a result, the ALJ found that Plaintiff did not have a disability, as defined under the Social Security Act, and did not award disability benefits.

Plaintiff argues (1) that the ALJ committed reversible error in failing to acknowledge the opinion of Dr. Holland that her condition meets listing level severity under Listing 11.09; (2) that substantial evidence did not support the ALJ's conclusion that no significant weight should be

-6-

given to Dr. Holland's assessments of Plaintiff; and (3) that the ALJ erred by failing to properly

evaluate Plaintiff's subjective complaints.  As the Commissioner has adopted the ALJ's decision

as her final determination, the Court will review that decision.  The ALJ's determinations at steps

three and four of the five-step evaluation are at issue in this case.

      A.    Step Three:  Equivalence to an Impairment Listed in Appendix 1

Under the regulations, Plaintiff is automatically eligible for benefits if the severity of her

impairment is equivalent to one of the listings in Appendix 1.  See 20 C.F.R. § 404.1520(a)(4).

Because Plaintiff's impairment is caused by MS, Plaintiff's condition is evaluated against the

criteria of Listing 11.09, which are as follows:

> A.  Disorganization of motor function as described in 11.04B; or
> B.  Visual or mental impairment as described under the criteria in
> 2.02, 2.03, 2.04, or 12.02; or
> C.  Significant, reproducible fatigue of motor function with
> substantial muscle weakness on repetitive activity, demonstrated
> on physical examination, resulting from neurological dysfunction
> in areas of the central nervous system known to be pathologically
> involved by the multiple sclerosis process.

20 C.F.R. Part 404, Subpt. P, App. 1, Listing 11.09.  Under Listing 11.04B, a "disorganization of

motor function" is a "significant and persistent disorganization of motor function in two

extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and

station."  20 C.F.R. Part 404, Subpart P, App. 1, Listing 11.04B.  Plaintiff contends that her

impairment meets the level of Listing 11.09A and C.

      1.    Dr. Holland's August 12, 2004 Findings

Plaintiff contends that the ALJ's finding at step three of the analysis was in error because

the ALJ did not acknowledge or discredit Dr. Holland's opinion of August 12, 2004.  On that

date, Dr. Holland examined Plaintiff and filled out a MS Residual Functional Capacity

Worksheet.  Dr. Holland indicated that Plaintiff's MS symptoms included fatigue, balance problems, poor coordination, unstable walking, tingling or numbness, depression, and double or blurred vision.  (R. at 160.)  Dr. Holland responded "Yes" to a question on the worksheet asking if Plaintiff had "significant reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process."  (R. at 161.)  His notes from the visit reported that Plaintiff had had "no significant relapses" and that her "main residual problem is left-sided clumsiness, poor endurance, and fatigue."  (R. at 165.)  He also noted that Plaintiff's residual fatigue prevented her from walking more than three blocks without resting, and that Plaintiff's "balance is a little poor and she can't bend down and pick things up without falling."  (R. at 165.)  During a trip to Hershey Park, Plaintiff "had a hard time getting around, and fell a few times."  (R. at 165.)

### a.    Weight Given to a Treating Physician's Opinion

A treating physician's opinion should be given substantial weight if that physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record.  20 C.F.R. § 404.1527(d)(2).  If an ALJ rejects a treating physician's assessment, he or she must base the rejection "'only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion."  Morales v. Apfel, 225 F.3d 310, 317 (3d 2000) (quoting Plummer, 186 F.3d at 429).  The issue of whether a claimant is disabled is reserved to the Commissioner, and a medical source's statement that a claimant is disabled will

not be binding on the Commissioner.  20 C.F.R. § 404.1527(e); <u>see</u> <u>also</u> Soc. Sec. Ruling 96-5p, 1996 WL 374183, at * 3 (S.S.A. July 2, 1996).

Dr. Holland is a neurologist who has been treating Plaintiff for MS since 2002.  His opinion is thus entitled to substantial weight unless there is contradictory medical evidence.  The ALJ briefly addressed Dr. Holland's August 12, 2004 opinion, stating that he did not "give significant weight" to the opinion because the doctor's notes indicating that Plaintiff could only stand for 15 minutes and walk no more than 3 blocks were "internally inconsistent" with earlier treatment notes that showed that Plaintiff had "fairly benign symptoms."  (R. at 16.)  In particular, the ALJ referred to Dr. Holland's notes from March 2003, which noted that Plaintiff's symptoms were relatively mild and that treatment consisting of a new round of steroids would not be necessary.  (R. at 16.)  Also, the ALJ discounted Dr. Holland's opinion because "there was no indication that the claimant had returned to Dr. Holland in more than a year" before August 12, 2004.  (R. at 16.)

After examining the record, the Court finds that the ALJ's conclusion that Dr. Holland's August 12, 2004 opinion was inconsistent with his past reports is not supported by substantial evidence.  Dr. Holland's March 17, 2003 report states that "things have been about the same" since Plaintiff's last visit, except that Plaintiff had developed "diplopia," or double vision, most likely caused by "a lesion affecting the right trochlear nerve or nucleus."  (R. at 122.)  Dr. Holland further contemplated that Plaintiff had probably had a "new lesion in the brainstem sometime between January [2003] and now."  (R. at 122.)  He then concluded that Plaintiff's symptoms were "relatively mild."  (R. at 122.)  Although he decided that another course of steroids would not be necessary, he continued Plaintiff on "high dose interferon therapy with

Betaseron."  (R. at 122.)

Dr. Holland's letter makes clear that his comments that Plaintiff's symptoms were mild refer to her development of a new lesion on her brain, as well as her new condition of diplopia, and not to the earlier impairments experienced by Plaintiff due to MS.  Thus, the ALJ's conclusion that Dr. Holland's notes show that Plaintiff has "fairly benign symptoms" is not supported by the record.  (R. at 16.)  The ALJ was also incorrect when he found that there was no evidence of Plaintiff having seen Dr. Holland for more than a year before the August 12, 2004 visit.  (R. at 16.)  Dr. Holland's note indicates that he saw Plaintiff six months earlier.  (R. at 165.)

The ALJ also did not explain how Dr. Holland's opinion was inconsistent with the findings of other doctors who examined Plaintiff.  Both Dr. Dauzier and Dr. Coffey noted Plaintiff's physical difficulties due to her unsteady gait, which is consistent with Dr. Holland's findings.  (R. at 15.)  Dr. From found that Plaintiff's "symptoms of fatigue & loss of balance are credible and consistent with the medical evidence."  (R. at 142.)  Further, the Court notes that Dr. Holland's August 12, 2004 report indicates that Plaintiff had an exacerbation of MS in July 2003.  (R. at 161.)  This exacerbation occurred after Plaintiff had been examined by Dr. Dauzier, Dr. Coffey, Dr. From, and Dr. Gash.  The ALJ did not explain why Dr. Holland's August 12, 2004 opinion was given little weight even though it provided the most current data on Plaintiff's condition.

As a result, the Court will vacate and remand the case due to the ALJ's refusal to give Dr. Holland's opinion the appropriate weight.  On remand, the ALJ must either give Dr. Holland's opinion the proper weight specified by the regulations, or adequately explain how Dr. Holland's

-10-

August 12, 2004 opinion was inconsistent with the medical evidence in the record.  See <u>Morales</u>, 225 F.3d at 318.

<u>b.</u>       <u>Insufficient Explanation of Conclusions by ALJ</u>

A court may set aside the ALJ's determination if the ALJ "'merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment,' without identifying the relevant listed impairments, discussing the evidence, or explaining his reasoning." <u>Burnett v. Comm'r of Soc. Sec.</u>, 220 F.3d 112, 119 (3d Cir. 2000) (quoting <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009 (10th Cir. 1996)).  This is because "[s]uch a bare conclusion is beyond meaningful judicial review." <u>Id.</u>

Here, the ALJ summarized reports from Dr. Holland, Dr. Dauzier, and Dr. Coffey before stating that "[t]he medical evidence indicates that the claimant has MS, an impairment that is 'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (R. at 15.)  The ALJ found that Plaintiff's impairment was not of listing level severity because she only had "slight unsteadiness of gait." (R. at 15.)

In <u>Burnett</u>, the ALJ engaged in a very brief analysis of step 3 of the evaluation, stating that "[a]lthough [Burnett] has established that she suffers from a severe musculoskeletal [impairment], said impairment failed to equal the level of severity of any disabling condition contained in Appendix 1." <u>Burnett</u>, 220 F.3d at 119.  The Third Circuit found that this statement was too insubstantial to allow meaningful judicial review, and remanded the case back to the ALJ for further development of the record. <u>Id.</u> at 119-20.  Similarly, in the case at hand, the ALJ did not explain his reasoning for his determination that Plaintiff's MS was not of listing level

-11-

severity.  Rather, he relied on a rote summary of the medical evidence.  Furthermore, as

discussed above, the ALJ erred by not giving any significant weight to Dr. Holland's August 12,

2004 opinion.  Therefore, the Court will vacate and remand the case to the ALJ to provide a more

detailed analysis of why Plaintiff's impairment is not equivalent to Listing 11.09.

> B.    Step Four: Residual Functional Capacity

Plaintiff contends that the ALJ also erred in his determination of Plaintiff's residual

functional capacity because (1) the ALJ failed to give weight to Dr. Holland's findings on August

12, 2004, and (2) the ALJ did not properly evaluate Plaintiff's subjective complaints.  The ALJ

found that Plaintiff retained the residual functional capacity to perform a range of light work and

also sedentary work.  (R. at 16-17.)  Light work would involve lifting no more than 20 pounds at

a time with frequent lifting or carrying of objects weighing up to 10 pounds.  20 C.F.R. §

404.1567(b).  Sedentary work involves lifting no more than 10 pounds at a time and occasionally

lifting or carrying articles like docket files, ledgers, and small tools.  20 C.F.R. § 404.1567(a).

The ALJ must "consider <u>all</u> the relevant evidence when determining an individual's

residual functional capacity in step four."  <u>Fargnoli</u>, 247 F.3d at 41 (emphasis added).  This

includes "descriptions of limitations by the claimant and others."  <u>Id.</u>  In particular, "[c]areful

consideration must be given to any available information about symptoms because subjective

descriptions may indicate more severe limitations or restrictions than can be shown by objective

medical evidence alone."  Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996).

However, such limitations or restrictions must be "attributable to medically determinable

impairments."  <u>Id.</u> at *2.  If an ALJ finds that a claimant is not credible, he or she must "give

some indication of the evidence that he rejects and his reason(s) for discounting that evidence."

-12-

Fargnoli, 247 F.3d at 43.

Here, the ALJ found that Plaintiff's statements about her impairment were "not entirely credible in light of the reports of treating and examining practitioners and the findings made on examination." (R. at 16.) He noted that Plaintiff could "adequately take care of her activities of daily living and personal care," and could "drive and perform household chores, even if she has to rest." (R. at 16.) He also found that Plaintiff's testimony about her fatigue was not credible to the degree alleged, and that Plaintiff can "ambulate independently with a slightly unsteady gait, but . . . does not require assistance." (R. at 16.) The ALJ then summarily concluded that Plaintiff had the residual functional capacity for a range of light work and sedentary work.

This conclusion was not supported by substantial evidence in the record. The ALJ improperly based his determination of Plaintiff's residual functional capacity on his findings regarding her ability to take care of the basic necessities of life. See Smith v. Califano, 637 F.2d 968, 971-72 (3d Cir. 1981) (finding that a claimant's ability to take care of the necessities of life does not negate the possibility that he or she is disabled).

Furthermore, the ALJ failed to consider all of the relevant evidence before him. See 20 C.F.R. § 404.1545(a)(1). In particular, he did not consider Dr. Holland's August 12, 2004 opinion, which indicated that Plaintiff experienced residual fatigue, could only "stand for 15 minutes and can walk no more than 3 blocks," would need to take unscheduled breaks, and could only occasionally lift less than 10 pounds. (R. at 16, 162-65.) Dr. Holland's report also indicated that Plaintiff had poor balance and could not bend down and pick things up without falling. (R. at 165.) In addition, the ALJ failed to address the portions of medical reports that corroborated Plaintiff's subjective complaints, as well as those that indicated that Plaintiff's

impairments also prevented her from driving at night because of her double vision, required her to rely on her husband to do the shopping, and kept her preparation of meals to the level of heating frozen meals.

As a result, the Court finds that the ALJ's determination at step four of the evaluation is not supported by substantial evidence in the record.  On remand, the ALJ must consider all of the relevant evidence and explain how the evidence supports his finding of Plaintiff's residual functional capacity.

V.      Conclusion

For the above-mentioned reasons, the Court vacates and remands the Commissioner's determination.  An appropriate order is filed herewith.

        __s/ Anne E. Thompson_____
        ANNE E. THOMPSON, U.S.D.J.

Dated: May 17, 2006